PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY COGSWELL, *et al.*, | ) | |
| | ) | CASE NO. 4:21CV2241 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| VIENNA TOWNSHIP, OHIO, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 22] |

Pending are Defendants Vienna Township, Ohio; Sergeant Scot Pringle, and Officer Brandon Shuler's Motion for Summary Judgment.[1] *See* ECF No. 22. Plaintiffs filed a brief in opposition. *See* ECF No. 24. Defendants replied. *See* ECF No. 25. Having reviewed the briefs, the record, and the applicable law, Defendants' Motion is granted.

### I. Background[2]

#### A. First Interaction

In November 2019, Plaintiffs Tammy Cogswell ("Mrs. Cogswell") and Kenneth Cogswell ("Mr. Cogswell") hired Ms. Brittany Maras ("Ms. Maras") to provide childcare while

---

[1] Defendants, all of whom are represented by the same counsel, did not include any mention of John Does 1-3 in their Motion for Summary Judgment or reply brief. *See* ECF Nos. 22, 25.

[2] The parties failed to submit joint stipulations of uncontested facts in accordance with the Case Management Conference Plan/Order. *See* ECF No. 11 at PageID #: 101. Defendants submitted notice to the Court indicating that they proposed stipulations to Plaintiffs' counsel and, subsequently, proposed a Joint Notice regarding stipulations to Plaintiffs' counsel, but no stipulations were reached. *See* ECF No. 23. This writing is best evidence that stipulations were possible. Counsel is cautioned against flagrantly failing to comply with orders of the Court.

(4:21CV2241)

Plaintiffs worked. *See* ECF No. 1 at PageID #: 7, ¶ 20. In late November 2019, Ms. Maras asked Mrs. Cogswell to loan her $30, to be considered an advance on future babysitting. *See* ECF No. 1 at PageID #: 7, ¶ 21. A couple of days before Ms. Maras was to provide babysitting services, she notified Mrs. Cogswell that she could no longer provide the services. *See* ECF No. 1 at PageID #: 7–8, ¶ 22. Mrs. Cogswell requested that the $30 be returned and found a new babysitter. *See* ECF No. 1 at PageID #: 7–8, ¶ 22. A few days later, Ms. Maras showed up at Plaintiffs' residence, claiming to have left a notebook in Plaintiffs' house. *See* ECF No. 1 at PageID #: 8, ¶ 23. Ms. Maras waited in the driveway of Plaintiffs' home until they returned because the new babysitter refused to let her inside. *See* ECF No. 1 at PageID #: 8, ¶ 24. When Plaintiffs arrived home, Ms. Maras demanded that Plaintiffs return her notebook but said she did not have the $30. Mrs. Cogswell denied knowing where the notebook was located "within her home," but offered to look for it and return it when Ms. Maras returned her $30. *See* ECF No. 1 at PageID #: 8, ¶ 24. Consequently, Ms. Maras called the Vienna Township Police Department. *See* ECF No. 1 at PageID #: 8, ¶ 25. Sergeant Pringle responded to the call and was met by Ms. Maras, who told him that she owed Mrs. Cogswell $30 and left a notebook in Plaintiffs' home. Mrs. Cogswell then allowed Sergeant Pringle inside of her home.

After speaking with Mrs. Cogswell, Sergeant Pringle told her that the return of her $30 was a civil matter, but the return of the notebook was not. *See* ECF No. 1 at PageID #: 9, ¶ 27. When Sergeant Pringle finally asked Mrs. Cogswell where the notebook was, Mrs. Cogswell responded that she did not take the notebook but rather that it had been abandoned in her home. *See* ECF No. 1 at PageID #: 9, ¶ 27. After that response, Sergeant Pringle told Mrs. Cogswell that he was going to arrest her. *See* ECF No. 1 at PageID #: 9, ¶ 29. Sergeant Pringle then charged Mrs. Cogswell with theft, handcuffed her, and kept her detained in his police car for

2

(4:21CV2241)

more than ten minutes before removing Mrs. Cogswell from the car and issuing her a summons to appear in Girard Municipal Court. *See* ECF No. 1 at PageID #: 9, ¶ 31.

### B. Second Interaction

In January 2020, Mrs. Cogswell's grandson, who suffers from an intellectual disability, was living in Plaintiffs' home. The grandson called his mother, Jacqueline Sage, threatening to harm himself with a screwdriver. *See* ECF No. 1 at PageID #: 10, ¶ 34. Ms. Sage called the police, and Sergeant Pringle and Officer Schuler were dispatched to Plaintiffs' home. *See* ECF No. 1 at PageID #: 10, ¶ 35. Upon learning that Ms. Sage had called the Vienna Township Police Department, Mrs. Cogswell called to request the assistance of the Trumbull County Sheriff's Deputies instead, because of her mistrust of the Vienna Township police.[3] *See* ECF No. 1 at PageID #: 10, ¶ 35. Meanwhile, Mrs. Cogswell refused to allow Sergeant Pringle and Officer Shuler access to her home, informed them that she had called the Trumbull County Sheriff's office, and reassured them that her grandson was safe. *See* ECF No. 1 at PageID #: 10, ¶ 36.

Sergeant Pringle told Mrs. Cogswell that, because of the severity of the situation pertaining to her grandson, both he and Officer Schuler had to enter Plaintiffs' home. *See* ECF No. 1 at PageID #: 11, ¶ 37. By this time, Vienna Township Fire Department personnel had also arrived at Plaintiffs' house. *See* ECF No. 1 at PageID #: 11, ¶ 37. Mrs. Cogswell told Sergeant Pringle and Officer Schuler that she was going to wait for the Trumbull County Sherriff's Deputies. *See* ECF No. 1 at PageID #: 11, ¶ 38. In response, Sergeant Pringle called his supervisor, Lieutenant Darby, who advised Sergeant Pringle to standby for another unit to arrive.

---

[3] Mrs. Cogswell's theft charge from November 2019 was still pending, at this time. *See* ECF No. 1 at PageID #: 10, ¶ 36.

3

(4:21CV2241)

See ECF No. 1 at PageID #: 11, ¶ 39. Despite this advice, Mrs. Cogswell alleges that Sergeant Pringle continued to try to gain entry into Plaintiffs' house, and, ultimately, Sergeant Pringle told Mrs. Cogswell that she would be arrested for obstructing official business if she did not send her grandson outside. See ECF No. 1 at PageID #: 11–12, ¶ 41–42.

Ms. Sage eventually arrived at Plaintiffs' home. See ECF No. 1 at PageID #: 12, ¶ 45. The officers attempted to convince Ms. Sage to let them into Plaintiffs' home; however, Ms. Sage, understanding Mrs. Cogswell's reason for refusing to allow the officers' entry, denied the officers' requests to enter Plaintiffs' home. See ECF No. 1 at PageID #: 12, ¶ 45. After the Trumbull County Sheriff's Deputies arrived, Sergeant Pringle and Officer Schuler arrested Mrs. Cogswell. See ECF No. 1 at PageID #: 12, ¶ 46. Sergeant Pringle took Mrs. Cogswell to the Trumbull County jail and charged her with obstructing official business. See ECF No. 1 at PageID #: 13, ¶ 48. Mrs. Cogswell claims that Sergeant Pringle used excessive force while taking her into custody. See ECF No. 1 at PageID #: 13, ¶ 47.

Plaintiffs' Complaint raises the following claims against Defendants: (1) false arrest/imprisonment in violation of 42 U.S.C. § 1983 and of Ohio law; (2) excessive force in violation of 42 U.S.C. § 1983 and § 1985; (3) malicious prosecution in violation of 42 U.S.C. § 1983 and of Ohio law; (4) abuse of process; (5) civil conspiracy; (6) failure to train and/or supervise employees: in violation of 42 U.S.C. § 1983; (7) intentional infliction of emotional distress; (8) civil liability for criminal acts under Ohio Rev. Code §§ 2307.60 (A)(1) and 2921.45 (violation of civil rights); (9) civil liability for criminal acts under Ohio Rev. Code §§ 2307.60 (A)(1) and 2921.44(E) (derelictión of duty); and (10) loss of consortium. See ECF No. 1 at PageID #: 14–26.

4

(4:21CV2241)

## II. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 462 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The fact under dispute must be "material," and the dispute itself must be "genuine." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Id*. ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The trial court is not required to search the entire record to establish that a genuine issue of material fact exists." *Malee v. Anthony & Frank Ditomaso, Inc.*, No. 1:16CV490, 2018 WL 1805402, at *2 (N.D. Ohio Apr. 16, 2018) (citing *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008)) (abrogated on other grounds). " '[I]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c),' the court may determine that fact is undisputed." *Malee,* No. 1:16CV490, 2018 WL 1805402, at *2 (quoting Fed. R. Civ. P. 56(e)(2)).

To survive summary judgment, the non-moving party "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'"

(4:21CV2241)

F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved" by a factfinder. *KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 464 (6th Cir. 2019) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In analyzing a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017)).

### III. Discussion

#### A. Qualified Immunity

Defendants argue that they are entitled to qualified immunity for their actions in question in this instant matter. *See* ECF No. 22 at PageID #: 307; ECF No. 25 at PageID #: 350. Plaintiffs contend that Sergeant Pringle's actions "were unnecessary, obviously vindictive and intended to humiliate her," therefore, a defense of qualified immunity is not applicable. ECF No. 24 at PageID #: 336.

"Qualified immunity is a defense government officials can raise when claims arise from the performance of their discretionary functions." *Meeks v. Larsen*, 999 F. Supp. 2d 968, 977 (E.D. Mich. 2014), *aff'd*, 611 F. App'x 277 (6th Cir. 2015). Government officials performing

6

(4:21CV2241)

discretionary functions are shielded from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome Defendants' qualified immunity defense, Plaintiffs must plausibly plead facts showing 1) that Defendants violated a constitutional right and 2) that "the right at issue was 'clearly established' at the time of defendant[s'] alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 467 (6th Cir. 2023). The Court maintains discretion to resolve either prong of the analysis first. *See Pearson*, 555 U.S. at 236 ("The judges of the district courts and the court of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

On the occasions resulting in the arrest of Mrs. Cogswell, Ms. Maras and Ms. Sage, respectively, placed calls seeking law enforcement assistance. *See* ECF No. 1 at PageID #: 7–10. Defendants Pringle and Shuler were dispatched to Plaintiffs' home in response to those calls. Based on the record provided, the Court finds that in both instances, Defendants were on duty and operating within their discretionary authority as police officers in responding to the calls and, ultimately, placing Mrs. Cogswell under arrest. Therefore, Defendants properly raised a qualified immunity defense.

The burden now "shifts to the plaintiffs to demonstrate that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).

7

(4:21CV2241)

### 1. Plaintiffs Fail to Identify a Constitutional Right Violated

Plaintiffs claim that Defendants violated Mrs. Cogswell's right to confront her accuser, Ms. Maras, pursuant to the Sixth Amendment to the U.S. Constitution. *See* ECF No. 24 at PageID #: 336. Mrs. Cogswell asserts that Ms. Maras made no complaint of theft, and Sergeant Pringle was unable to make a complaint without a witness. *See* ECF No. 24 at PageID #: 336. Plaintiffs argue that "[a]ny reasonable law enforcement officer would know of Mrs. Cogswell's right to be confronted by the witness against her under the Sixth Amendment to the U.S. Constitution." ECF No. 24 at PageID #: 336.

While the Confrontation Clause of the Sixth Amendment guarantees a defendant the right to confront the witnesses against her, this right only applies in criminal prosecutions. *See United States v. Collins*, 799 F.3d 554, 576 (6th Cir. 2015); U.S. Const. amend. VI; *cf. State v. Smith*, 2023-Ohio-603, ¶ 75, 209 N.E.3d 883, 900 (stating that the Ohio Constitution includes its own version of the Confrontation Clause, which similarly provides that criminal defendants have the right to confront witnesses). Additionally, Plaintiffs fail to provide any additional evidence, either from the docketed record or case law, to support the assertion that a specific constitutional right was violated. Instead, Plaintiffs rely on unsubstantiated conclusions and speculations about Defendants' state of mind in support of their argument against qualified immunity. Plaintiffs submit:

> Sgt. Pringle's conduct at the Cogswell residence on November is distressingly reminiscent of that of Lavrentiy Beria, the most ruthless of Stalin's chiefs of the secret police, who bragged that he could prove criminal conduct on anyone, even the innocent. "Show me the man and I'll show you the crime" was his infamous boast. Ms. Maras showed Sgt. Pringle the woman and Sgt. Pringle showed the crime. In his police report Sgt. Pringle described Mrs. Cogswell as "irritated and irate" and that she "did not obey" his orders. It is clear that Sgt. Pringle wished to punish Mrs. Cogswell and demonstrate his power over her by placing her under arrest,

8

(4:21CV2241)

> handcuffing her and placing her in the back of his cruiser. These acts were unnecessary, obviously vindictive and intended to humiliate her, considering he released her and issued a summons to come to court. Such conduct can never fall under qualified immunity.
>
> As stated above, Sgt. Pringle did not seek a search warrant. He did not even ask to search the Cogswell home. One possible explanation for Sgt. Pringle's lack of interest in obtaining a search warrant is that he didn't believe that he could convince a judge that he had probable cause. Another explanation is that he knew that it was purely a civil matter falling far beyond the bounds of his official [capacity]. These are genuine issues of material fact that remain to be tried. Summary judgment is therefore inappropriate.

ECF No. 24 at PageID #: 336. Therefore, the Court finds that Plaintiffs have failed to establish the first prong required to overcome Defendants' qualified immunity defense because they have not shown that Defendants' actions constitute a violation of Plaintiffs' Sixth Amendment or any other constitutional or statutory right.

### 2. Sergeant Pringle Acted Reasonably Under the Segmenting Approach

The Sixth Circuit Court of Appeals prefers the segmenting approach when analyzing police conduct, which instructs courts to evaluate police conduct by focusing "on the 'split-second judgment' made immediately before" the officer's conduct rather than focusing on "the poor planning or bad tactics that might have 'created the circumstances' that led to the" conduct in question.[4] *See Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 978 (6th Cir. 2019) (citing *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 406–07 (6th Cir. 2007); *Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996)). Plaintiffs note that Sergeant Pringle, upon arriving at the residence and after speaking with Ms. Maras, approached Mrs. Cogswell and

---

[4] *See e.g.*, *Mosier v. Evans*, No. 120CV02197JDBTMP, 2023 WL 2074320 (W.D. Tenn. Feb. 17, 2023), *appeal dismissed*, No. 23-5227, 2023 WL 4105377 (6th Cir. Mar. 23, 2023).

9

(4:21CV2241)

explained to her that she could not retain possession of the notebook even if Ms. Maras owed her money. *See* ECF No. 24 at PageID #: 329. Mrs. Cogswell responded to Sergeant Pringle by telling him that she would return the notebook only after Ms. Maras had paid the debt owed to her. *See* ECF No. 24 at PageID #: 329. Mrs. Cogswell repeatedly refused to return the notebook, even after Sergeant Pringle cautioned her that he would place her under arrest if she refused to return the notebook. *See* ECF No. 24 at PageID #: 329.

      A person in Sergeant Pringle's position, hearing that the return of a debtor's property hinged on the repayment of a debt, can reasonably assume that the one seeking payment, Mrs. Cogswell, was in possession of said property. The Court fails to see the legal significance of Plaintiffs' assertion that Sergeant Pringle never saw the notebook prior to arresting Mrs. Cogswell for committing theft. *See* ECF No. 24 at PageID #: 336–37. Sergeant Pringle was called to the residence by Ms. Maras because she was unable to search Plaintiffs' home for her missing notebook. *See* ECF No. 24 at PageID #: 325. Sergeant Pringle spoke with Ms. Maras first, and then approached Mrs. Cogswell to request that she return the notebook. *See* ECF No. 24 at PageID #: 329. Mrs. Cogswell repeatedly refused to return the notebook because she insisted that Ms. Maras owed her $30. *See* ECF No. 24 at PageID #: 329. Sergeant Pringle explicitly told Mrs. Cogswell that she would be placed under arrest if she continued to refuse to return the notebook. *See* ECF No. 24 at PageID #: 329. Nonetheless, Mrs. Cogswell continued to refuse, and Sergeant Pringle, in his capacity as an officer, arrested her for theft. *See* ECF No. 24 at PageID #: 330.

      Plaintiffs attempt to persuade the Court that Sergeant Pringle acted outside of the scope of his employment and official responsibilities and unreasonably intervened in a civil matter.

10

(4:21CV2241)

ECF No. 24 at PageID #: 337. Based on the Ohio Revised Code's characterization of theft,[5] however, Sergeant Pringle had probable cause to arrest Mrs. Cogswell after a preliminary assessment that the facts of the case—which involved Mrs. Cogswell's exertion of control over Ms. Maras's notebook with the purpose of depriving Ms. Maras of her notebook and without Ms. Maras's consent—satisfied the elements of a crime of theft under Ohio Revised Code § 2913.02. Consequently, the Court is not persuaded that Sergeant Pringle's acts were "manifestly outside the scope of his employment and official responsibilities." ECF No. 24 at PageID #: 337. By applying the Sixth Circuit's preferred segmenting approach, it is clear to the Court that Sergeant Pringle acted reasonably given the narrow totality of the circumstances that culminated in his arrest of Mrs. Cogswell.

     Plaintiffs fail to identify any constitutional or statutory right that Defendants violated during their two arrests of Mrs. Cogswell. Additionally, the segmenting approach analysis of Sergeant Pringle's conduct during the first arrest of Mrs. Cogswell affirms that he and, to the extent involved, Officer Shuler, acted reasonably in their capacity as law enforcement officers. Even when considering the totality of the circumstances from a broader perspective,[6] Plaintiffs' conclusory statements alone are insufficient to meet the burden to overcome Defendants'

---

[5] Ohio Revised Code § 2913.02, the statute criminalizing theft, states, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: [w]ithout the consent of the owner or person authorized to give consent."

[6] The Court's analysis is also supported by other approaches preferred by other circuit courts. *See* Hon. Cathy Bissoon, Hon. Benita Y. Pearson, Hon. David A. Sanders, *From the Kkk to George Floyd: Three Judges Explore Qualified Immunity*, 22 Sedona Conf. J. 533, 549–50 (2021) ("The Fourth, Fifth, and Eleventh Circuits evaluate an officer's use of force only at the instant it was applied, regardless of the preceding circumstances . . . . The First and Ninth Circuits look to the totality of the circumstances surrounding each claim before them").

11

(4:21CV2241)

qualified immunity defense. Furthermore, Plaintiffs cannot meet their burden of proof by making an emotional appeal to the Court without adequate legal support. For these reasons, the Court finds that Defendants are entitled to qualified immunity in this matter and, consequently, to summary judgment on Plaintiffs' claims.

### B. Claim One: False Arrest/Imprisonment[7]

Even if the Court were to accept Plaintiffs' argument that Defendants are not entitled to qualified immunity, Defendants also argue that Plaintiffs inappropriately bring claims for false arrest and false imprisonment. *See* ECF No. 22 at PageID #: 303–06. A false arrest occurs when an arrest lacks the requisite probable cause. *See* Howse v. Hodous, 953 F.3d 402, 409 (6th Cir. 2020). "The Supreme Court has held that the reason the officer gives for an arrest need not be the reason which *actually* provides probable cause for the arrest . . . [i]f the facts known to the officers support probable cause in any form." *Id.* (citing Devenpeck v. Alford, 543 U.S. 146, 153–55 (2004)). A determination of probable cause relies on a practical and common-sensical standard based on the totality of the circumstances. *See* Maryland v. Pringle, 540 U.S. 366, 371 (2003). Probable cause exists when the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

Plaintiffs assert that Defendants lacked the probable cause necessary to arrest Mrs. Cogswell for disruption of public services and that she was falsely imprisoned in violation of 42 U.S.C. § 1983. *See* ECF No. 24 at PageID #: 339. Defendants argue that they had probable

---

[7] The following analyses regarding Claims One and Three support the Court's alternative rulings.

(4:21CV2241)

cause to arrest Mrs. Cogswell on both occasions. *See* ECF No. 25 at PageID #: 356. To establish probable cause in both incidents of Mrs. Cogswell's arrest, "[t]he arresting officer must take into account inculpatory and exculpatory information known to him when determining whether probable cause exists." *See Harrison v. Ellison*, No. 3:21-CV-174-RGJ, 2023 WL 4141050 (W.D. Ky. June 22, 2023) (citing *Barton v. Martin*, 949 F.3d 938, 951 (6th Cir. 2020)). The first arrest occurred as a result of Mrs. Cogswell maintaining possession and refusing to return a notebook belonging to Ms. Maras. *See* ECF No. 25 at PageID #: 347. The Sixth Circuit has held that because "eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016) (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)). Therefore, probable cause was sufficiently established when Ms. Maras told Sergeant Pringle that Mrs. Cogswell had her notebook and refused to return it. This probable cause was substantiated later, when during her deposition, Mrs. Cogswell testified that she "had a locker [that she] kept [the notebook] in at work," and admitted that she refused to give the notebook back to Ms. Maras, who owed her money. ECF No. 21-1 at PageID #: 151–52.

The second arrest occurred as a result of Defendants being called to Plaintiffs' residence in response to a 9-1-1 call and Mrs. Cogswell refusing the responding officers' entry. *See* ECF No. 21-1 at PageID #: 147. During her deposition, Mrs. Cogswell testified that she refused to allow Sergeant Pringle into the home, even after Sergeant Pringle made it clear that his accompanying officer could not enter the residence alone when responding to a situation in which someone was claiming to harm themself with a weapon. *See* ECF No. 21-1 at PageID #: 154–56. Sergeant Pringle, having identified probable cause, subsequently arrested Mrs. Cogswell for the obstruction of justice and the misuse of a 9-1-1 system. *See* ECF No. 21-2 at

13

(4:21CV2241)

PageID #: 264. Moreover, Mrs. Cogswell later verified that Defendants had probable cause to arrest her when she admitted, during her deposition, that she prevented Sergeant Pringle from entering Plaintiffs' home to respond to an emergency in accordance with police protocol. Given that Plaintiffs have not adequately shown that Defendants lacked the requisite probable cause in either instance of arrest, Plaintiffs have failed to establish their claim of false arrest/imprisonment. Accordingly, in the alternative, the Court finds in favor of Defendants on Plaintiffs' Claim One.

### C. Claim Three: Malicious Prosecution

Defendants also assert that Plaintiffs' claim of malicious prosecution is improper. *See* ECF No. 22 at PageID #: 306–07. To prevail on their claim of malicious prosecution, Plaintiffs must prove the following four elements:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (quoting *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017)). As discussed in the preceding section regarding Plaintiffs' claim for false arrest/imprisonment, Defendants established the existence of probable cause for both arrests of Mrs. Cogswell. Plaintiffs have not offered evidence to rebut Defendants' demonstration of probable cause or to create a genuine issue of fact. Because Plaintiffs have failed to establish all four required elements of a malicious prosecution claim, the Court finds in favor of Defendants on Plaintiffs' Claim Three, in the alternative.

(4:21CV2241)

**D. Plaintiffs' Abandonment of Claims Two, Four, Five, Six, Seven, Eight, Nine, and Ten**

Plaintiffs fail to meaningfully respond to Defendants' Motion regarding the following claims: excessive force (Claim Two), abuse of process (Claim Four), civil conspiracy (Claim Five), failure to train and/or supervise employees (Claim Six), intentional infliction of emotional distress (Claim Seven), civil liability for criminal acts under Ohio state law including violation of civil rights and dereliction of duty (Claims Eight and Nine), and loss of consortium (Claim Ten). Instead of citing specific evidence from the record or case law to support these claims, Plaintiffs appear to gloss over them with a few bare bones assertions, including 1) Defendants are not entitled to qualified immunity on the state law claims; 2) there are disputed facts regarding each of these claims; and 3) "[t]here remain factual issues to be decided by a jury." *See* ECF No. 24 at PageID #: 343–44. Plaintiffs do not offer any additional justifications beyond these conclusory statements.

"[The Sixth Circuit's] jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). Therefore, the Court finds that Plaintiffs have abandoned these claims and dismisses these claims with prejudice.

**IV. Conclusion**

Defendants' Motion for Summary Judgment (ECF No. 22) is granted. Final judgment will be entered in favor of Defendants Vienna Township, Ohio; Sergeant Scot Pringle; and Officer Brandon Shuler and against Plaintiffs. Additionally, the Court dismisses without prejudice all of Plaintiffs' claims against John Does 1–3, "as service of process, and, by extension the institution of a lawsuit, cannot be effected on fictitious

15

(4:21CV2241)

persons." *Webster v. Freedom Debt Relief, LLC*, No. 1:10CV1587, 2011 WL 3422872, at *2 (N.D. Ohio Aug. 4, 2011); *see also* Fed. R. Civ. P. 17 ("[a]n action must be prosecuted in the name of the real party in interest.).

    IT IS SO ORDERED.

| | |
|---|---|
| September 8, 2023 | /s/ *Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |